IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


|  |  |  |
|---|---|---|
| | : | |
| EDNA S. REAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| TOMMY IRVIN, Individually and | : | 1:06-CV-1511-RWS |
| in His Official Capacity as | : | |
| Commissioner of the Georgia | : | |
| Department of Agriculture, | : | |
| MELINDA DENNIS, and LAURA | : | |
| FOKES, | : | |
| | : | |
| Defendants. | : | |

## ORDER

On January 5 and 6, 2006, Georgia Department of Agriculture ("GDA")

officials executed a warrant to inspect the family farm of Plaintiff Edna S.

Reams to determine whether equines on her farm were being provided adequate

food and water.  As a result of their inspection, the officials impounded 46

horses and 3 donkeys.  Ms. Reams unsuccessfully sought administrative review

within the GDA and, after filing this action, initiated judicial review in the

Superior Court of Fulton County.  Ms. Reams brought the instant action under

42 U.S.C. § 1983, alleging that, in impounding her equines, GDA officials violated her rights under the Due Process Clause, the Equal Protection Clause, and the Fourth Amendment to the United States Constitution.

Before the Court are Defendants' Motion for Summary Judgment [51] and Defendants' Motion to Exclude Plaintiff's Proffered Expert [76].  Because this case comes before the Court on Defendants' Motion for Summary Judgment, the Court considers the facts in a light most favorable to Ms. Reams.

### The Georgia Humane Care For Equines Act

Ms. Reams challenges the procedures by which the State of Georgia regulates and enforces the humane treatment of horses under the Georgia Humane Care for Equines Act, O.C.G.A. § 4-13-1, et seq. ("the Act").  Before reciting the facts, the Court briefly reviews the authority of the GDA to impound equines and the procedures by which an owner of equines may contest such an impoundment.

Under the Act, an equine owner is obligated to provide adequate food and water, provide humane care, and not unnecessarily overload equines.  O.C.G.A. § 4-13-3.  The Commissioner of Agriculture has the authority to enforce the provisions of the Act by, among other things, impounding horses that have not

2

been furnished with adequate food and water and fining owners who have not adequately cared for their equines.  O.C.G.A. § 4-14-4(b).  The Commissioner or his designee may obtain an inspection warrant from the appropriate court and inspect equines at the owner's premises with the assistance a licensed veterinarian.  Id.; see also O.C.G.A. § 2-2-11.  Upon the determination by the veterinarian that any equines have not been furnished with adequate food and water, the equines may be immediately impounded.  O.C.G.A. § 4-14(b).

The Act provides a means by which an owner may challenge the impoundment of her equines.  Pursuant to O.C.G.A. § 2-2-9.1(d), any equine owner "adversely affected by any order or action of the Commissioner to include . . . impoundment . . . upon petition within 30 days after the issuance of such order or the taking of such action, shall have a right to a hearing before a hearing officer appointed. . . by the Commissioner."  Id.   The decision of the hearing officer is the final decision of the agency unless appealed by either party to the Commissioner.  Id.  After a final decision by the Commissioner, an equine owner may also seek judicial review in Georgia Superior Court.  O.C.G.A. § 2-2-9.1(n).  The Georgia Administrative Procedure Act, in addition to authorizing review of a final order of the GDA Commissioner, provides that

3

"[a] preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." O.C.G.A. § 50-13-19.

### Factual Background

On January 3, 2006, Defendant Laura Fokes, an Equine Inspector employed by the GDA, obtained an inspection warrant from the Macon County Magistrate Court based upon sworn knowledge concerning the health and treatment of equines located on Ms. Reams' farm. The warrant authorized GDA officials to "inspect any equine found on [Ms. Reams'] property to determine if a violation of [the Act] occurred." (Pl.'s Ex. 35.) Two days later, Ms. Fokes, Defendant Melinda Dennis, a Macon County Sheriff's deputy, and Dr. Henry Loper, a veterinarian employed by the United States Department of Agriculture, arrived to inspect the equines on Ms. Reams' property.

In addition to inspecting the horse pastures of Ms. Reams' property, the officials noticed several piles of animal bone and a carcass located in a wooded area near a back pasture on Ms. Reams' property. The back pasture was across a fence in an area that was approximately 60 to 100 yards from Ms. Reams' dwelling. (Defs.' St. of Mat. Facts ¶¶ 71-81.) They examined that wooded area

4

as well as an open dairy barn and dairy pasture located at least 150 to 200 yards from Ms. Reams' dwelling.  (Id.)[1]

As a result of his inspection, Dr. Loper determined that 49 of Ms. Reams' equines were not being provided with adequate food and water.  Dr. Loper's determination led GDA officials to seize and impound those equines.  GDA officials also took photographs of Ms. Reams' horse pastures, the wooded area with the carcass and bones, and Plaintiff's dairy farm and dairy cows.  (PSMF ¶ 49.)  The GDA officials did not notify Ms. Reams of her right to contest the impoundment of her equines vis-a-vis O.C.G.A. § 4-13-3.

On January 26, Ms. Reams conferred with several members of the GDA, including Defendants Fokes and Dennis.  During their conversation, Plaintiff challenged the reasons offered by Defendants Fokes and Dennis for impounding her equine and requested a hearing on the matter.  (PSMF ¶ 42.)

---

[1] Ms. Reams attempts to dispute Defendants' evidence concerning the distance between her dwelling and the location of her dairy barn and the location where the GDA officials discovered the bone piles and carcass by pointing to inconsistencies in the approximations and memories of Defendants and other witnesses.  (See Pl.'s Resp. to Defs.' St. of Mat. Facts ¶¶ 71-81.)  However, Ms. Reams has failed to point the Court to any affirmative evidence in the record disputing the approximate distances offered by Defendants.  Nor has Ms. Reams provided any explanation as to why such easily ascertainable evidence has not been offered.  Having failed to genuinely dispute the testimony of Defendants on this issue, the Court is left to consider only those approximations of distance present in the record.

Despite that request, Defendants did not inform Ms. Reams of her right to file a petition with the GDA pursuant to O.C.G.A. § 4-14-3. They concentrated their efforts on encouraging Ms. Reams to agree to a consent order with the GDA which would have limited the number of equines on Ms. Reams' farm.

On February 20, Defendant Irvin issued an administrative order pursuant to O.C.G.A. § 2-2-9.1(c), citing Ms. Reams for her failure to provide adequate food, water, and/or humane care for the impounded horses. The order also fined Ms. Reams $74,000 and required Ms. Reams to reduce her herd to 30 horses. The order notified Ms. Reams in writing that she had a right to a hearing to contest the administrative order and fine. (Pl. St. of Mat. Facts ¶ 56-57.) This was the first time Ms. Reams was explicitly notified of her right to a hearing under the Act.

On February 28, Ms. Reams initiated a Petition for Agency Review challenging the GDA's administrative order, including the impound of her horses. Subsequent to the filing of her petition, the GDA's counsel notified Ms. Reams that if she refused to sign a consent order, the GDA intended to sell her equines and may do so before the conclusion of administrative proceedings. On March 3, 2006, Ms. Reams filed an Emergency Petition for Judicial Stay in the

Superior Court of Fulton County to halt the sale of her equines.  On March 23, 2006, the Superior Court issued an order staying any sale and authorizing her to pick up her equines from the state's impound facility, so long as she provided a written assurance of adequate care and posted a $47,360 bond related to the impoundment costs.  (PSMF ¶ 61.)  Ms. Reams later retrieved her horses at her own expense.  Ms. Reams states that the horses were in worse health upon her retrieval.

On June 23, 2006, while her administrative action was still pending, Ms. Reams filed the instant action.  Shortly thereafter, on July 31, 2006, Ms. Reams filed a Motion to Stay Administrative Proceedings in her administrative action before the GDA.  After review, the GDA issued an order concluding that the aspect of Ms. Reams' administrative action contesting the initial seizure of her horses was time barred because "such acts occurred more than [30 days] prior to the filing of the Petition on February 28, 2006 and are final."  (Pl. St. of Mat. Facts ¶ 89.)

On January 4, 2007, Ms. Reams filed in Fulton County Superior Court a petition seeking review of the GDA's order disposing of Ms. Reams' administrative challenge.  (PSMF ¶ 90.)  The record does not contain any detail

concerning the nature or resolution of Ms. Reams' pending action in Superior Court, nor has Plaintiff alleged that her action in Superior Court has not adequately provided her an opportunity to review the administrative action of the GDA or the sufficiency of the GDA administrative procedure.

Defendants have since moved for summary judgment on all claims in this action.  Defendants have also moved to exclude Plaintiffs' expert in this action. Because the Court finds that Defendants are entitled to summary judgment, the Court need not reach the merits of Defendants' Motion to Exclude Plaintiff's expert.

### Discussion

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The court should view the evidence and any inferences that may be drawn from it in the light most favorable to the non-movant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The burden

then shifts to the non-movant, who must go beyond the pleadings and present

affirmative evidence to show that a genuine issue of material fact does exist.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed.

2d 202 (1986).

Defendants have raised qualified immunity as a defense to Ms. Reams'

individual-capacity claims.  Because there is no dispute that Defendants were

engaged in discretionary acts, the nature of the inquiry on summary judgment is

two-fold.  First, the Court considers whether the violation of a constitutional or

statutory right has been alleged.  Second, if a violation has been alleged, the

Court asks whether that right was clearly established at the time of the alleged

violation.  See Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir. 1999)

(quoting Wilson v. Layne, 526 U.S. 603, 119 S. Ct. 1692, 1697, 143 L. Ed. 2d

818 (1999)).

## I.      Procedural Due Process

In order to state a claim under 42 U.S.C. § 1983 for deprivation of a

federally protected right to procedural due process, a claimant must allege that

the state fails to provide an adequate state remedy.  Cotton v. Jackson, 216 F.3d

1328, 1330 (11th Cir. 2000).  "Only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise."  McKinney, 20 F.3d at 1557; see also Foxy Lady, Inc. v. City of Atlanta,  347 F.3d 1232, 1238 (11th Cir. 2003) ("Because an adequate post-deprivation process is in place under state law, no federal procedural due process claim exists.").

The fundamental requirement of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v. Eldridge, 424  U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (citations and quotations omitted).  "The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard."  Goldberg v. Kelly, 397 U.S. 254, 268-69, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).  "That is, procedural due process 'is not a technical conception with a fixed content unrelated to time, place, and circumstances.'  [Cit.]  Rather, procedural due process 'is flexible and calls for such procedural protections as the particular situation demands.'"  Foxy Lady, Inc. v. City of Atlanta, 347 F.3d 1232, 1236 (11th Cir. 2003) (quoting Mathews, 424  U.S. at 334).  In Mathews, the

10

Supreme Court set forth three factors to consider in determining whether an individual has received a meaningful procedure:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Ms. Reams alleges that Defendants violated the Due Process Clause because Defendants did not provide her with (1) pre-deprivation process, (2) adequate notice of the existence of the administrative procedure set forth in O.C.G.A. § 2-2-9.1, or (3) a neutral decision-maker in her administrative proceeding.  In moving for summary judgment, Defendants contend that they are entitled to judgment as a matter of law because Ms. Reams has failed to demonstrate that she was denied procedural due process after her equines were impounded by the GDA.  Defendants argue that pre-deprivation process is impracticable and O.C.G.A. § 2-2-9.1(d) provides an adequate post-deprivation procedure by which an owner of equines may contest an impoundment or an administrative order of the GDA disposing of impounded property.  For the

11

reasons provided below, the Court concludes that Ms. Reams has failed to demonstrate a constitutional violation, and accordingly, Defendants are entitled to qualified immunity.

As an initial matter, the Court readily rejects Ms. Reams' contention that, under the circumstances presented in this case, pre-deprivation process was mandated by the Due Process Clause.  Although it is true that a state deprivation of property normally must be preceded by adequate process, "in some circumstances . . . a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990).  The Supreme Court has made clear that postdeprivation process is generally sufficient where there exists a "necessity of quick action by the State or the impracticability of providing any predeprivation process."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 436, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982).  Affording an equine owner an opportunity to be heard prior to impounding malnourished equines would manifestly be impracticable because such a procedure would substantially impede a state's ability to enforce its laws respecting the humane treatment of equines.  Accord, e.g., City of Los Angeles

12

v. David, 538 U.S. 715, 717-18, 123 S. Ct. 1895, 155 L. Ed. 2d 946 (2003)

(holding that post-deprivation procedure occurring 27 days after impoundment

of automobile for alleged parking violation did not violate due process because

"temporary" deprivation of vehicle was outweighed by interest in effective

enforcement of parking regulations, "administrative necessity" of post-

deprivation hearing, and "burdensome" nature of predeprivation or immediate

post-deprivation hearing).

In this case, Georgia's interest in enforcing the Humane Care for Equines

Act in an expeditious manner outweighs Ms. Reams' property interest in

temporarily using her equine between the time of impoundment and the time of

a hearing. Furthermore, holding a post-deprivation hearing, as opposed to a

pre-deprivation hearing, "is unlikely to spawn significant factual errors." Id.

Accordingly, considering the factors enumerated in Mathews, the Court

concludes that a post-deprivation hearing following the impoundment of

equines for an alleged violation of the Humane Care for Equines Act meets the

strictures of the Due Process Clause.

Having concluded that Plaintiff was not entitled to pre-deprivation

process, the Court must "look to whether the available [post-deprivation] state

13

procedures were adequate to correct the alleged procedural deficiencies."

Cotton, 216 F.3d at 1330.  Under the Act, Plaintiff had (and indeed, took) the

opportunity to contest the initial impoundment and the administrative order

relating to the impoundment of her equines and the fines for violation of the

Act.  See O.C.G.A. § 2-2-9.1  The Act provides:

> Any . . . equine owner . . . aggrieved or adversely affected by any order
> or action of the Commissioner to include . . . impoundment . . . upon
> petition within 30 days after the issuance of such order or the taking of
> such action, shall have a right to a hearing before a hearing officer
> appointed or designated for such purpose by the Commissioner."

Id.

In addition to availing Ms. Reams of the opportunity to administratively

challenge the actions of the GDA, the Act explicitly provides Ms. Reams the

opportunity to seek state judicial review.  The Act vests in the Superior Court of

Georgia the authority to review any order of the GDA and remedy any

deficiency in the GDA's administrative process.  See O.C.G.A. § 2-2-9.1(n)

("Judicial review of the Commissioner's final decision may be had in

accordance with [the Georgia Administrative Procedure Act].");  O.C.G.A. § 50-

13-19.  State judicial review is not limited to the final decision of the GDA

because, under the Georgia Administrative Procedure Act, Ms. Reams could

14

also seek review of any "preliminary, procedural, or intermediate agency action

. . . if review of the final agency decision would not provide an adequate

remedy." O.C.G.A. § 50-13-19. Thus, even assuming *arguendo* that there were

deficiencies in the administrative process, Georgia provided Ms. Reams the

opportunity to contest in Superior Court both the deprivation of her equine and

the adequacy of her administrative remedy.[2] The judicial safety valve provided

by the Georgia Administrative Procedure Act forecloses any constitutional

challenge to the procedural adequacy of the hearing-and-appeal procedure set

forth in the Humane Care for Equines Act. See, e.g, McKineey v. Pate, 20 F.3d

1550, 1565 (11th Cir. 1994) ("Since the Florida courts possess the power to

remedy any deficiency in the process by which McKinney was terminated,

McKinney can not claim that he was deprived of procedural due process.");

Bell v. City of Demopolis, 86 F.3d 191, 192 (11th Cir. 1996) (stating that "the

state offers an adequate remedy in the form of administrative *as well as state*

*court review*" (emphasis added)); Narey v. Dean, 32 F.3d 1521, 1528 (11th Cir.

---

[2] Indeed, she is apparently doing just that. Several months after initiating this action, Ms. Reams filed in Fulton County Superior Court a Petition for Judicial Review of the GDA's Order disposing of her administrative challenge. (Pl. St. of Mat. Fact ¶ 90.)

15

1994) ("Narey . . . did not take advantage of the opportunity for state court review and cannot now claim that the state deprived him of procedural due process."). Because Ms. Reams does not allege that the Georgia Superior Court provided her an inadequate opportunity to review the administrative hearing-and-appeal process, Ms. Reams' due process challenge fails.

In sum, under the circumstances presented in this case, due process was satisfied by the availability of both administrative and state-court review.[3] Having failed to demonstrate a violation of the Due Process Clause, Defendants

---

[3] Although Ms. Reams contends that Defendants were obligated under the Due Process Clause to specifically notify her of the administrative procedure by which she could challenge the deprivation of her equines, Ms. Reams offers no support for such a principle in any case within the Eleventh Circuit. The codification of the administrative procedure in O.C.G.A. § 2-2-9.1 and the codification of judicial review in O.C.G.A. § 50-13-19 itself provided Ms. Reams adequate notice of her opportunity to challenge the deprivation at issue. See, e.g., Cotton, 216 F.3d at 1330 (concluding that availability of mandamus was sufficient state procedure to demand name-clearing hearing, and, in doing so, implicitly concluding that codification of such a procedure was sufficient notice of its availability).

Furthermore, although Ms. Reams contends that Defendant Irvin made statements prior to her administrative hearing that call into question his neutrality as the final decisionmaker in her hearing before the GDA, Ms. Reams does not contend that such a deficiency cannot be corrected by a Georgia state court pursuant to the Georgia Administrative Procedure Act. See O.C.G.A. § 50-13-19. Nor does Ms. Reams demonstrate how the fact that Dr. Loper was not a veterinarian licensed by the State of Georgia renders the process afforded to her in a Georgia state court insufficient.

16

are entitled to qualified immunity.[4]  For the same reasons as provided above, Defendant Irvin is entitled to judgment as a matter of law on Ms. Reams' claim against him in his official capacity.

## II.    Equal Protection

Ms. Reams also challenges the Humane Care for Equines Act under the Equal Protection Clause of the Fourteenth Amendment.  She claims that the procedures applicable to private owners of equines under the Humane Care for Equines Act are unconstitutional because they are different from the procedures applicable to impoundment of equines which are taken from pet dealers or kennel operators licensed by the State of Georgia under the Georgia Animal Protection Act, O.C.G.A. § 4-11-1, et seq.

Unlike the Humane Care of Equines Act, which applies to private owners of equine, the Georgia Animal Protection Act applies to decisions by the GDA to impound animals seized directly from a licensed pet dealer or kennel operator.  It requires the impounding official to "notify the owner of such animal immediately upon impoundment" and, among other things, provide in

---

[4] Alternatively, the Court concludes that the right proffered by Plaintiff is not clearly established; thus, even assuming *arguendo* that Plaintiffs have stated a constitutional violation, Defendants are still entitled to qualified immunity.

writing "the reason why the animal was impounded [] and a statement of the time limits for the owner to respond and request a hearing . . . ."  O.C.G.A. § 4-11-9.4.  The owner must respond in writing within five business days of the date the notice of impoundment was served to request a hearing.  O.C.G.A. § 4-11-9.5.  This differs from the procedure set forth in the Humane Care for Equines Act, which does not require written notice, but grants the owner thirty days in which to request a hearing.  O.C.G.A. § 2-2-9.1(d).

Defendants move for summary judgment, contending that Ms. Reams has failed to demonstrate that she, as a private owner of equine, is similarly situated to owners of equine subject to impoundment of animals being cared for by licensed operators under the Animal Protection Act.  Moreover, Defendants contend that rational reasons exist for the difference in procedure.  For the reasons provided below, the Court agrees that Defendants are entitled to summary judgment.

The Equal Protection Clause protects individuals from being disparately treated by the government without justification.  Ms. Reams is not a member of a protected class, and thus the rational basis test applies.  See Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060

(2000).  Under that test, Ms. Reams must demonstrate that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id. at 564.  The state action must be "irrational and wholly arbitrary" in order to trigger equal protection concerns.  Id. at 565.

Accepting without deciding that Ms. Reams, as a private owner of equine, is similarly situated to those private owners of equines which are being cared for by commercial operators licensed by the State, Plaintiff has failed to demonstrate how it is irrational to apply different procedures to seizures of equine directly from private and unlicensed owners from the procedures applicable to seizures of equines from licensed persons and commercial entities.

The reasons for the difference in treatment are as rational as they are apparent.  First, private owners of equine seized directly from their possession are generally already on actual notice of the impoundment; thus, there is generally no need to inform them of the seizure in writing.  Conversely, owners of equine which are seized from licensed individuals or entities may not be on actual notice of the act impoundment.  Thus, the State of Georgia may have

rationally concluded that there is a need to inform the latter class of private owners of the fact and nature of the impoundment of their animals.

Second, licensed entities are more likely operating a commercial enterprise and, thus, more likely to suffer economic injury from an impoundment. Thus, the State of Georgia may have rationally concluded that a more immediate hearing is appropriate because of this circumstance.

Third, because the Animal Protection Act provides only five days in which to request a hearing, the State of Georgia may have rationally concluded that requiring written notice with a statement of reasons and the deadline for a hearing request is necessary to ensure the fairness of the hearing procedure. The Humane Care for Equine Act, by contrast, grants an owner of equine 30 days in which to request a hearing, and thus written notice of the deadline to request such a hearing is less necessary. An equine owner can determine in that time frame the specific reasons for the impoundment by discussing the impoundment decision directly with the GDA, as did Ms. Reams in this case.

In sum, Ms. Reams has failed to demonstrate that she has been the victim of "irrational and wholly arbitrary" treatment. See Village of Willowbrook, 528 U.S. at 566. Having failed to demonstrate a constitutional violation, Defendants

are entitled to qualified immunity.[5]  Moreover, for the same reasons as stated

above, Defendant Irvin is entitled to summary judgment in his official capacity.

## III.    Unreasonable Search and Seizure

Ms. Reams also claims that Defendants violated her Fourth Amendment

right to be free from unreasonable searches and seizures because they exceeded

the scope of their warrant when inspecting the equines on her family farm on

January 5 and 6, 2006.  Ms. Reams claims that Defendants violated the Fourth

Amendment by inspecting the wooded area where they found several piles of

animal bone and a carcass and by inspecting Ms. Reams' dairy barn and dairy

pasture.

Defendants move for summary judgment, contending that Ms. Reams had

no reasonable expectation of privacy in the wooded area behind her home or in

the open dairy barn.  Moreover, Defendants alternatively contend that they had

probable cause to search those areas.  For the reasons provided below, the Court

agrees that Ms. Reams has failed to demonstrate a constitutional violation, and

thus Defendants are entitled to qualified immunity.

---

[5] Alternatively, the Court concludes that the right proffered by Plaintiff is not clearly established; thus, even assuming *arguendo* that Plaintiffs have stated a constitutional violation, Defendants are still entitled to qualified immunity.

21

The Fourth Amendment provides:

>The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. am. IV.

In order to have standing to challenge the legality of a search or seizure, a plaintiff must have (1) a personal, subjective expectation of privacy in the place searched or the things seized and (2) the expectation must be objectively reasonable under the circumstances.  See United States v. Chaves, 169 F.3d 687, 690 (11th Cir. 1999); see also United States v. McBean, 861 F.2d 1570, 1573 (11th Cir. 1988).

As a general matter, open fields surrounding a house are not protected under the Fourth Amendment, and thus a search of them need not be accompanied by a warrant issued upon probable cause.  United States v. Williams, 581 F.2d 451, 453 (5th Cir. 1978).  The curtilage of the home, however, including the "home and its immediate appurtenances," id. (quoting Hodges v. United States, 243 F.2d 281, 283 (5th Cir. 1957)), is generally

22

protected by the Fourth Amendment and requires a warrant to search.   The

curtilage "is the area to which extends the intimate activity associated with the

sanctity of a man's home and the privacies of life."  United States v. Taylor,

458 F.3d 1201, 1206 (11th Cir. 2006).  This area, however, is not unlimited.  "It

is limited to that property that the individual should reasonably expect to be

treated as the home itself."  Id.  That is, the "area must be an integral part of that

group of structures making up the 'immediate domestic establishment of the

home.'"  Id. at 1207 (quoting United States v. Berrong, 712 F.2d 1370, 1374

(11th Cir. 1983)).

In United States v. Dunn, 480 U.S. 294, 300, 107 S. Ct. 1134, 94 L. Ed.

2d 326 (1987), the Supreme Court identified four factors to consider when

determining whether the Fourth Amendment protects privacy interests within

the curtilage of a dwelling house:  (1) the proximity of the area claimed to be

curtilage to the home; (2) the nature of the uses to which the area is put; (3)

whether the area is included within an enclosure surrounding the home; and, (4)

the steps the resident takes to protect the area from observation.  Id.; see also

United States v. Hall, 47 F.3d 1091, 1097 (11th Cir. 1995).  Applying those

factors, the Court held in Dunn that a barn used for storing chemicals, which

was located approximately 60 yards from the individual's dwelling, was not

located within the curtilage of the home for Fourth Amendment purposes

because it was too distant from the home and was not being used in connection

with any intimate activity of the home.  <u>Dunn</u>, 480 U.S. at 302.  Similarly, in

<u>United States v. Hatch</u>, 931 F.2d 1478, 1481 (11th Cir. 1991), the Eleventh

Circuit held that a group of marijuana plants growing approximately thirty

yards from the house and separated by a barn, tack room, taxidermy building,

and several stock pens was far enough from the house to be outside its curtilage.

<u>Id.</u>  And in <u>Taylor</u>, the Eleventh Circuit held that a pond area approximately 250

feet away from the dwelling and 100 feet away from a barn was not within the

curtilage of the home because it was situated away from the immediate

domestic establishment of the home and visible from the perimeter fence.  458

F.3d at 1201.

  Ms. Reams' contends that the Fourth Amendment protected the field in

which Defendants discovered the carcass and bones and the open dairy barn

located at least 150 yards from the dwelling on her farm.  However, Ms. Reams

has failed to point the Court to any affirmative evidence which would establish

that either Ms. Reams had an objectively reasonable expectation of privacy in

those areas of her property or that such areas were within the curtilage of her home.  Though Ms. Reams contends in conclusive fashion that the record is "rife with factual questions," (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 24), the only fact Ms. Reams specifies that is in dispute is whether the wooded area in which the carcass and bones were found was visible from any horse pasture on the property.  Simply put, Ms. Reams has not directed the Court to any evidence addressing the four <u>Dunn</u> factors:  (1) the proximity of the area claimed to be curtilage to the home; (2) the nature of the uses to which the wooded area or the dairy barn is put; (3) whether the area is included within an enclosure surrounding the home; and, (4) the steps the resident takes to protect the area from observation.

Rather, even when viewing the evidence in a light most favorable to Ms. Reams, each of the four factors considered under <u>Dunn</u> lead to the conclusion that the two areas at issue were not a part of the curtilage of the home.  First, Ms. Reams does not genuinely dispute that the wooded area at issue was at least 60 yards away from the dwelling and the dairy barn was at least 150 yards from the dwelling.  (Defs.' St. of Mat. Facts ¶¶ 71-81; Pls.' Resp. to Defs.' St. of Mat. Facts  ¶¶ 71-81.)  That is at least as great a distance away from the

AO 72A
(Rev.8/82)

dwelling as the barn in <u>Dunn</u> (60 yards) and the field in <u>Hatch</u> (30 yards).

Second, Ms. Reams does not contend that either the wooded area or the dairy

barn was used as an "integral part of that group of structures making up the

immediate domestic establishment of the home."   <u>Taylor</u>, 458 F.3d at 1207

(citations and quotations omitted).  Rather, it appears that the wooded area was

undeveloped and the dairy barn was used exclusively for the commercial

production of dairy products.  <u>Accord</u> <u>Dunn</u>, 480 U.S. at 302 (barn used to store

chemicals).  Third, there is no evidence in the record that indicates that either

the field or the dairy barn were included within an enclosure surrounding the

dwelling.  And fourth, Ms. Reams has offered no evidence of any affirmative

steps she has taken to protect the wooded area or the dairy barn from

observation.  Rather, it is undisputed that the dairy barn was not even itself

enclosed, having no exterior door.  (Defs.' St. of Mat. Fact ¶ 77; Pl.'s Resp. to

Defs.' Statement of Material Fact ¶ 77.)[6]

---

[6] Ms. Reams does not dispute that, "[a]t the time of any equine inspection,
Plaintiff's dairy barn was open and visible and did not include a closed door that would
need to be opened in order to visually inspect any of Plaintiff's cows." (Defs.' St. of Mat.
Fact ¶ 77.)

Having considered the four <u>Dunn</u> factors, the Court concludes that Ms. Reams has failed to demonstrate that she had a reasonable expectation of privacy in the areas at issue—in either the open field where a carcass and bones were discovered or the open dairy barn where Defendants took several photographs of Ms. Reams' cows.[7]  Accordingly, even assuming *arguendo* that Defendants exceeded the scope of the warrant at issue, they are nonetheless entitled to qualified immunity because Ms. Reams has failed to demonstrate that she had any interest protectible by the Fourth Amendment in the areas at issue.[8] Defendant Irvin is entitled to summary judgment for the same reasons discussed above.

## IV.     Defendants' Motion in Limine

Having concluded that Defendants are entitled to judgment as a matter of law on all of Ms. Reams' claims in this action, Defendants' Motion to Exclude Plaintiff's Proffered Expert [76] is denied as moot.

---

[7] The Court's conclusion is bolstered by its understanding that Ms. Reams did not live in the dwelling at issue.  Rather, the record reflects that Ms. Reams lives outside of the state of Georgia; the caretaker to her farm, who is not a party to this action, lived in the dwelling at issue at all times relevant to this action.

[8] Alternatively, the Court concludes that the right proffered by Plaintiff is not clearly established; thus, even assuming *arguendo* that Plaintiffs have stated a constitutional violation, Defendants are still entitled to qualified immunity.

27

AO 72A
(Rev.8/82)

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment [51] is **GRANTED**.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff in this action.  Defendants' Motion to Exclude Plaintiff's Proffered Expert [76] is **DENIED as moot**.

**SO ORDERED** this __31st__ day of March, 2008.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)